NOT FOR PUBLICATION [Docket No. 1]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VANESSA YOUNG, on behalf of D'ANDRE KING, a minor child,<br><br>            Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY, MICHAEL J. ASTRUE,<br><br>            Defendant. | Civil No. 08-4896 (RMB)<br><br>**OPINION** |

APPEARANCES:

Daniel Edward Orr
Morgan Lewis & Bockius
502 Carnegie Center
Princeton, NJ 08540
     Attorney for Plaintiff

Tomasina Digrigoli
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
     Attorney for Defendant

**BUMB**, United States District Judge:

I.  INTRODUCTION

Vanessa Young ("Plaintiff") brings this appeal on behalf of her minor son, D'Andre King, seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under

1

Title XVI of the Social Security Act ("Act").  This Court has jurisdiction over the instant matter pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the provisions of 42 U.S.C. § 405(g).  For the reasons set forth below, this Court will reverse the Commissioner's decision, and award benefits, after an appropriate calculation of benefits on remand.

## II. BACKGROUND

### A. Procedural Background

On October 31, 2004, Plaintiff filed an application for SSI on behalf of her son, D'Andre.  (Administrative Record ("R.") at 11).  The claim was denied initially on February 16, 2005.  (R. at 26-28).  Plaintiff filed a Request for Reconsideration on April 14, 2005.  (R. at 30).  It was denied on July 13, 2005.  (R. at 31-33).  On September 13, 2005, Plaintiff filed a second Request for Reconsideration, which was treated as a written request for hearing.  (R. at 35).  A hearing was held before Administrative Law Judge Daniel Shoemaker Jr. ("ALJ") on April 2, 2007, in Voorhees, New Jersey, where both Plaintiff and D'Andre testified.  (R. at 250).  On June 25, 2007, the ALJ issued a decision denying Plaintiff's claim.  (ALJ Opinion, R. at 8-22).  Plaintiff then filed an appeal of the ALJ's decision to the Appeals Council.  (R. at 235-42).  The Appeals Council denied the appeal on February 28, 2008, which became the final decision of

the Commissioner.[1]  (R. at 3-6).  On October 1, 2008, Plaintiff filed the above-captioned action in this Court seeking review of the Commissioner's decision.

**B.  Factual Background**

D'Andre King was born on December 31, 1999.  (ALJ Opinion at 4).  At the time of the administrative hearing, D'Andre was in first grade at Holly Heights Elementary School.  (R. at 258).  He suffers from both epilepsy and Attention Deficit Hyperactivity Disorder ("ADHD").

D'Andre was first diagnosed with Benign Rolandic epilepsy in 2001 by Dr. Wark in Camden and has since been treated with Trileptal, an anti-seizure medication.  (R. at 205).  He has also been followed by several neurologists, one of which has been Dr. Stephen Falchek at A.I. duPont Hospital.  (R. at 205).  His last visit with Dr. Falchek was in 2004, when Dr. Falchek noted that "[s]ince October of 2002, D'Andre has had approximately five seizures, the last seizure being in December of 2003."  (R. at 166).

However, a later report on February 17, 2006, by Dr. Steven Kugler, a neurologist at the Children's Hospital of Philadelphia,

---

[1] In this case, the Commissioner's decision, as represented by the Appeals Council's decision to deny appeal, upheld the ALJ's opinion.  As such, "ALJ" and "Commissioner" may be used interchangeably here.

suggested that perhaps D'Andre has a more severe form of epilepsy. Dr. Kugler wrote, "D'Andre is a young boy who has partial complex seizures, which we do not believe are necessarily consistent with Benign Rolandic seizures." (R. at 206). Further, he noted that "although the Trileptal has been helpful, he has never remained seizure-free for more than a few weeks at a time." (R. at 205).

Dr. Kugler's suspicions were shown to be correct one year later. On April 18, 2007, Dr. Richard S. Finkel, also a neurologist at the Children's Hospital of Philadelphia, changed D'Andre's diagnosis to "Epilepsy with cryptogenic complex partial seizures and C4 sharp focus on EEG." (R. at 124). Dr. Finkel noted that "there ha[d] been excellent compliance and no side effects [with Trileptal], but still 1-2 of his typical seizures per week." (R. at 124).

Though D'Andre suffers seizures both during the day and at night, his seizures typically occur at night. (R. at 205). They do occur occasionally at school, usually when he is asleep. (R. at 124). His mother states that she will "hear him making gasping or gagging noises and find the left side of his face, trunk, arm and leg twitching rhythmically. He is awake but unable to respond, and after the seizure he has trouble speaking effectively." (R. at 124). D'Andre's seizures have been more

4

threatening on certain occasions as he has been rushed to the hospital in an ambulance. (R. at 163, 202, 204). Another time, his mother came into his room and he was choking on his own vomit. (R. at 261).

D'Andre's nighttime seizures typically lead to residual effects of pain and fatigue that often cause him to miss school the next day. After one seizure, Dr. Zae Uh Shim noted that D'Andre was "weak on one side" and had "abdo[minal] pain." (R. at 163). After another seizure, one of his teachers noted that "[D'Andre] was alert but very tired." (R. at 203). According to his mother's testimony, D'Andre is "always complaining of stomachaches, and he's very like weak afterwards." (R. at 269). When asked if the effects of these nighttime seizures carry over to the next day, she answered that she frequently keeps him home the day following a seizure because he complains of "not feeling good." (R. at 265). His teachers have noticed his frequent absences and lateness. (R. at 208, 218).

In addition to his epilepsy, D'Andre also suffers from Attention Deficit Hyperactivity Disorder ("ADHD"). The ALJ found that D'Andre's ADHD became severe in January 2007. (ALJ opinion at 4). Moreover, Dr. Finkel's report noted that the symptoms of his ADHD "interfere with his daily activity or ability to

5

function effectively at school." (R. at 125). He has been taking Adderall to treat his ADHD. (R. at 125).

### III. STANDARD OF REVIEW

When reviewing a final decision of the Social Security Commissioner, the Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83, (3d. Cir. 2000). This means, "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, this Court is bound by the findings "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court must "review the evidence in its totality, but where it is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Commissioner of Social Sec., 165 Fed. Appx. 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984);

Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

The Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Access to the Commissioner's reasoning is essential to meaningful court review:

> [u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted); see also Guerrero v. Commissioner of Social Sec., 2006 WL 1722356 at *3 (D.N.J. 2006) (stating that is the ALJ's responsibility "to analyze all the evidence and to provide adequate explanations when disregarding portions of it") (internal citation omitted).

While the ALJ must review and consider pertinent medical evidence, review all non-medical evidence, and "explain [any] conciliations and rejections," Burnett v. Commissioner of Social Sec., 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed. Appx.

7

130, 133 (3d Cir. 2004); see also Fargnoli v. Halter, 247 F.3d 34, 42 (3d Cir. 2001) ("[a]llthough we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law").  Overall, the Court must set aside the Commissioner's decision if the Commissioner did not take the entire record into account or failed to resolve evidentiary conflict.  Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978)).

In addition to the substantial evidence inquiry, this Court must also review whether the administrative determination was made upon application of the correct legal standards.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).  This Court's review of legal issues is plenary.  Sykes, 228 F.3d at 262; Schaudeck v. Commissioner of Social Sec., 181 F.3d 429, 431 (3d Cir. 1999).

**IV. DISCUSSION**

    **A. Defining "Disability" for Purposes of SSI Eligibility**

A child under eighteen years of age is considered "disabled" for purposes of SSI eligibility if that child

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I).

To determine whether a child claimant is disabled, the Commissioner employs a three-step evaluation process. The Commissioner first determines whether the child is engaged in substantial gainful activity;[2] if the child is so engaged, he is not disabled. Second, the Commissioner determines whether the child has an impairment or combination of impairments that is severe; if the child's impairment is not severe, he is not disabled. Finally, in step three, the Commissioner determines whether the child's impairment meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Under the regulations,

---

[2] Substantial gainful activity is defined as activity that involves doing significant physical or mental activities done for pay or profit. Generally, activities like taking care of oneself, household tasks, hobbies, therapy, school attendance, club activities, or social programs are not considered to be substantial gainful activity. 20 C.F.R. § 416.972.

9

an impairment "medically equals" a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment."[3] 20 C.F.R. § 416.926(a). An impairment "functionally equals" a listed impairment if the child has either "marked" limitations[4] in two of the following domains or "extreme" limitations[5] in one domain:

    (I)   acquiring and using information;
    (ii)  attending and completing tasks;
    (iii) interacting and relating with others;
    (iv)  moving about and manipulating objects;
    (v)   caring for yourself; and
    (vi)  health and physical well-being

20 C.F.R. §§ 416.926a(b)(1), 416.926a(d). If the child's impairment meets, medically equals, or functionally equals a listed impairment, he is disabled under the Act. 20 C.F.R. § 416.924.

---

[3] More specifically, medical equivalence exists if (1) the findings related to an impairment are at least of equal medical significance to the required criteria; (2) an impairment is not described in the listings, but is of equal medical significance to an analogous listing; or (3) a combination of impairments is not described in the listings, but is of equal medical significance to an analogous listing. 20 C.F.R. § 416.926(b).

[4] A "marked" limitation is defined as an impairment that "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2).

[5] An "extreme limitation," is defined as an impairment that "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

**B. The ALJ's Decision**

Using the sequential evaluation process, the ALJ found that D'Andre satisfied the requirements of step one because he has never "engaged in substantial gainful activity at any time relevant to this decision." (ALJ Opinion at 4). At step two, the ALJ found that D'Andre has a seizure disorder and ADHD, which constitute severe impairments within the meaning of 20 C.F.R. § 416.924©. (Id.). At step three, however, the ALJ found that D'Andre's impairments did not "meet[] or medically equal[] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, giving particular consideration to medical listings 111.02/11.02; 111.03/11.03; 112.02/12.2; 112.04/12.04; 112.06/12.06; 112.08/12.08; and 112.11 (20 CFR 416.924, 416.925, 416.926)". (Id.). The ALJ also found that D'Andre's impairments did not "functionally equal[] the listings (20 CFR 416.924(d) and 416.926a)." (Id.). Accordingly, because D'Andre's impairments did not satisfy step three, the ALJ found that he is not disabled and, therefore, not entitled to benefits. (R. at 22).

**C. Plaintiff's Appeal**

Plaintiff challenges step three of the ALJ's determination, arguing that D'Andre does meet the listed impairments for "convulsive epilepsy" and "convulsive epilepsy syndrome" in

111.02 of 20 C.F.R. 404, Subpart. P. Appendix 1.  Plaintiff contends that the ALJ ignored reports by Dr. Finkel and Dr. Kugler, who treated D'Andre, and provided no explanation for why these reports were not considered.  Because of this error, Plaintiff claims the Commissioner's decision should be reversed and the Court should award SSI benefits to D'Andre.  In the alternative, Plaintiff argues that the Court should remand the case to the Commissioner for further review of the record with instructions that the administrative proceedings take no more than 90 days.

### D. Determination of Plaintiff's Disability

To meet the listed impairment for convulsive epilepsy, the child must have

> an established diagnosis of epilepsy, the occurrence of more than one major motor seizure per month despite at least three months of prescribed treatment[,] [w]ith: 1) [d]aytime episodes (loss of consciousness and convulsive seizures); or 2) [n]octurnal episodes manifesting residuals which interfere with activity during the day.

20 C.F.R. 404, Subpart. P. Appendix 1, 111.02(A)(2).

The ALJ found in his opinion that D'Andre does have a seizure disorder, but that D'Andre nonetheless did not meet the requirement for the listing of convulsive epilepsy.  (ALJ Opinion at 4).  In support of his conclusion, the ALJ noted that D'Andre has had only approximately five seizures since 2002, citing the report by Dr. Falcheck.  (ALJ Opinion at 5).  The ALJ also noted

that D'Andre has seizures only 2-3 times per year and cited Dr. Delucia's conclusion that D'Andre's epilepsy was "fairly well controlled." (ALJ Opinion at 7). Additionally, the ALJ relied upon the childhood disability evaluation form completed by a state agency review physician who concluded that D'Andre did not meet the listings. (Id.).

The Court finds the ALJ's opinion troublesome because it appears that he did not consider all of the evidence in the record. Specifically, he did not address the reports from two neurologists who recently treated D'Andre, Dr. Finkel and Dr. Kugler.

The Commissioner is required to analyze all of the evidence in the record and provide an adequate explanation for disregarding any evidence. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994). The Commissioner "must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." Id. While the Commissioner "may properly accept some parts of the medical evidence and reject other parts . . . [he] must consider all evidence and give some reason for discounting the evidence [he] rejects." Id. (emphasis added). The Court is obligated to set aside the Commissioner's decision if the Commissioner did not take the entire record into account or failed to resolve evidentiary conflict. Schonewolf v.

Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978)).

In this case, the ALJ's decision contains no discussion of the two reports by Dr. Kugler and Dr. Finkel.  Both reports stated that D'Andre suffers from seizures frequently - at least one every few weeks.  (R. at 124, 205).  Dr. Kugler wrote in his report dated February 17, 2006, that "although the Trileptal has been helpful, [D'Andre] has never remained seizure-free for more than a few weeks at a time."  (R. at 205).  Similarly, Dr. Finkel noted in his report dated April 18, 2007 that D'Andre has been on Trileptal for over a year and that "there has been excellent compliance ... [yet he] still [has] 1-2 seizures a week."  (R. at 124).  Thus, the two neurologists who examined D'Andre most recently both concluded that D'Andre continues to suffer from frequent seizures.  These two medical reports are corroborated by evidence from the record including testimony from D'Andre's mother (R. at 263), a seizure log kept by his mother (R. at 224) at the direction of Dr. Finkel (R. at 125), and certifications from two witnesses.[6]  (R. at 232).  Neither of the neurologists' reports were mentioned in the ALJ's opinion, nor was any reason given as to why they were rejected.  Thus, it cannot be determined from the record whether or not the ALJ considered this

---

[6] These witnesses were D'Andre's grandmother and the father of D'Andre's half-brothers and sister.

evidence in reaching his conclusion that D'Andre does not meet the listing for convulsive epilepsy.

Taking these more recent medical reports into account, it appears that D'Andre does indeed meet the requirements for disability under 20 C.F.R. 404, Subpart. P. Appendix 1, 111.02(A)(2). First, there is no dispute that D'Andre has an established diagnosis of epilepsy. (ALJ Opinion at 4). Second, as discussed above, there is substantial evidence that shows D'Andre suffers from at least several major seizures per month despite being on Trileptal. His nighttime seizures often result in residual effects, which interfere with his activity during the day. His mother's testimony describes how D'Andre often feels pain and fatigue after his seizures which "takes away from him being able to even participate in school because he's staying home where it's like he's being sick all the time." (R. at 269). This causes D'Andre to miss school frequently. (R. at 265). These residual effects are supported and corroborated by reports by his doctors (R. at 163) and his teachers (R. at 203, 208, 218). Given the most recent reports in the record and the corroborating evidence, the Court finds that D'Andre does meet the listing for "convulsive epilepsy" in 111.02(A)(2).[7]

---

[7] Plaintiff argues that D'Andre also meets the listing for "convulsive epilepsy syndrome" under 111.02(B). To meet this listing, the child must have

> an established diagnosis of epilepsy, the occurrence of at least one major motor seizure in the year prior to

15

**E. Determination of Remand or Reversal**

When reviewing a decision of the Commissioner, the Court may affirm, modify, or reverse the decision with or without remand to the Commissioner under 42 U.S.C. § 405(g). Where the Court rejects the Commissioner's decision, it may choose to remand the case to the Commissioner or simply reverse and award benefits. Newell v. Comissioner of Social Security, 347 F.3d 541, 549 (3d Cir. 2003). The Court should only reverse and award benefits "when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Id.; see also Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000) (reversing and awarding benefits because the ALJ wrongfully rejected extensive medical records that show claimant's disability); Podedworny v. Harris, 745 F.2d 210, 222 (3d Cir. 1984) (reversing

---

application despite at least three months of prescribed treatment. And [sic] one of the following: 1) IQ of 70 or less; or 2) [s]ignificant interference with communication due to speech, hearing or visual defect; or 3) [s]ignificant mental disorder; or 4) [w]here significant adverse effects of medication interfere with major daily activities.

20 C.F.R. 404, Subpart. P. Appendix 1, 111.02(B).

Plaintiff contends that D'Andre meets the listing for convulsive epilepsy syndrome because he has an established diagnosis of epilepsy, has frequent seizures, and has a significant mental disorder (i.e. ADHD). It seems that there is a dearth of authority on the issue of whether ADHD qualifies as a "significant mental disorder" under this particular section of the CFR. However, this Court need not delve into this issue as the Court has already determined that D'Andre meets the listing for "Convulsive Epilepsy."

and awarding benefits because the record dictated a finding that the claimant was disabled and entitled to disability benefits).

As discussed above, the record contains substantial evidence that D'Andre suffers at least one seizure every few weeks despite being on medication and that he suffers residual effects which interfere with his activity during the day.  Accordingly, an award of benefits is appropriate.  See, e.g., Flanery v. Chater, 112 F.3d 346 (8th Cir. 1997) (awarding benefits rather than remanding because the ALJ improperly rejected evidence of the frequency of seizures); Akers v. Callahan, 997 F. Supp. 648, 656 (W.D. Pa. 1998) (same); Steadman v. Heckler, 612 F. Supp. 393 (W.D. Pa. 1985) (same).  Moreover, the disability determination has already taken nearly five years.  Under the circumstances, the Court finds that further hearings would merely delay benefits even more.  See Morales, 225 F.3d at 320 (administrative delays supported reversing the decision and awarding benefits).  Because there is substantial evidence that D'Andre is disabled and entitled to benefits, the Court finds that the appropriate remedy is to reverse and award benefits.

**V.  Conclusion**

In sum, the Court rejects the ALJ's determination that D'Andre is not disabled because the ALJ failed to consider the two most recent neurological reports.  Furthermore, because the

17

record contains substantial evidence that D'Andre meets the listing for "Convulsive Epilepsy," this Court will reverse the ALJ's decision and award benefits to D'Andre.  The case will be remanded to the ALJ to calculate the appropriate benefits.


Dated:  July 7, 2009          s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              UNITED STATES DISTRICT JUDGE